IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CITY BANK, | § | |
| Plaintiff, | § § § | |
| v. | § | EP-11-MC-372-KC |
| COMPASS BANK, | § § § | |
| Defendant. | § § | |

**ORDER**

On this day, the Court considered "City Bank Texas's Motion to Withdraw the Reference," ("Motion") ECF No. 1. For the reasons set forth below, the Motion is **DENIED**.

**I.  BACKGROUND**

The Sambrano Corporation ("SamCorp") was formerly a general contracting firm based in El Paso, Texas, which specialized in the construction of larger commercial and government buildings. *City Bank v. Compass Bank*, 717 F. Supp. 2d 599, 602 (W.D. Tex. 2010). In September of 2005, SamCorp obtained a three million dollar revolving line of credit from City Bank (the "City Bank loan"). *Id.* The purpose of this line of credit was to support corporate expansion and replace an older and smaller line of credit. *Id.* To secure the loan, City Bank took a security interest in SamCorp's receivables. *Id.*

Two years later, in September of 2007, SamCorp obtained a four million dollar revolving line of credit from State National Bank (the "State National loan"), for the purpose of refinancing the City Bank loan and providing an additional one million dollars for corporate expansion. *Id.* Like City Bank, State National Bank secured a lien against the receivables as a security interest.

1

*See id.* As a condition to both loans, SamCorp had to pay off the City Bank loan. *Id.* at 603.

But SamCorp did not pay back the City Bank loan. *Id.* Instead, the advances on the State National loan were used for general corporate purposes. *Id.* For a few months, neither bank realized that SamCorp was drawing on the State National loan without retiring the City Bank loan. *Id.* at 603-04. However, in mid-January of 2008, the banks realized what was happening — almost at the same time — and it touched off a headlong race by the banks to obtain as much additional security, collateral, and cash as possible. *Id.*

Eventually, that race led to this courthouse. On July 24, 2008, Compass Bank, State National Bank's successor in interest, filed suit in this Court against SamCorp, Adelina V. Sambrano, Steven M. Sambrano, Cecilia Sambrano, City Bank, and Hartford Fire Insurance Company.[1] *See* Pl.'s Original Compl. 1, *Compass Bank v. Sambrano Corp.*, No. 08-CV-280-KC (W.D. Tex. July 24, 2008) ("2008 Case").

On August 25, 2008, City Bank filed an answer asserting several counterclaims. *City Bank*, 717 F. Supp. 2d at 604-05. First, City Bank alleged that the Sabranos illegally pledged an EDI brokerage account to Compass Bank. *See* City Bank's Original Answer and Countercl. ¶¶ 28-30, *Compass Bank v. Sambrano Corp.*, No. 08-CV-280-KC (W.D. Tex. Aug. 25, 2008). Second, City Bank alleged that the Sabranos illegally pledged 7,500 shares of Bank of the West stock to Compass Bank. *Id.* Third, City Bank alleged that in December of 2007 — the period when the banks did not know about the two outstanding loans — SamCorp received a $1,075,806.54 check (the "one million dollar payment") from the City of El Paso. *See City Bank*,

---

[1] Because Compass Bank has become State National Bank's successor in interest for all matters relating to this case, the two names may be regarded as interchangeable for present purposes.

717 F. Supp. 2d at 603-05.  SamCorp then used the one million dollar payment to pay down the State National Loan.  *Id.* at 605.  But about two weeks later, the one million dollars was re-advanced to SamCorp.  *Id.*  City Bank alleges that because it had a lien on SamCorp's accounts receivable, these transactions were fraudulent, tortiously interfered with its contract, and constituted conversion.  *Id.*  This fraudulent transfer claim regarding the one million dollar payment is the focus of the instant Motion.

At roughly the same time as City Bank filed its answer, the Hartford Fire Insurance Company filed an involuntary bankruptcy petition against the Sambranos and SamCorp.  *See id.*  In connection with this bankruptcy filing, an automatic stay on claims against the Sambranos and SamCorp took effect.  *Id.*

On February 18, 2009, Compass Bank moved the bankruptcy court to modify the stay.  *See* Mot. to Lift Stay to Permit Foreclosure of Lien and Disposition of Collateral: West Financial, Inc. Stock and Primevest Account, *In re Adelina V. Sambrano*, No. 08-31294-LMC (Bankr. W.D. Tex. Feb. 18, 2009).  The bankruptcy court granted the motion, allowing Compass Bank and City Bank to pursue their claims against each other.  *City Bank*, 717 F. Supp. 2d at 605.

This then led to a complex procedural maze.  First, there were several motions to sever, and eventually on September 8, 2009, this Court consolidated the claims between City Bank and Compass Bank into a case captioned *City Bank v. Compass Bank*, No. EP-09-CV-96-KC ("2009 case").  *See* Order 1-5, *City Bank v. Compass Bank*, No. 10-CV-62-KC (W.D. Tex. Oct. 21, 2010); Order on Joint Mot. for Clarification on Consolidation of Actions 2, *Compass Bank v. Sambrano Corp.*, No. 08-CV-280-KC (W.D. Tex. Sept. 8, 2009).  Next, after conducting discovery in the 2009 case, Compass Bank filed a motion for summary judgment in January of

3

2010. *City Bank*, 717 F. Supp. 2d at 605. Shortly thereafter, City Bank moved to amend its complaint to include additional claims for breach of contract, money had and received, and negligence. *Id.* at 606. Compass Bank opposed the amendment, so City Bank also filed suit over those claims in state court. *Id.* Compass Bank then removed the state court case to this Court under the caption *City Bank v. Compass Bank*, No. EP-10-CV-62-KC. *Id.* Now there was a third case — the "2010 case."

On May 12, 2010, the Court ruled on Compass Bank's motions for summary judgment and dismissal in the 2009 case. *See id.* at 599, 626. In that order, the Court: (1) transferred City Bank's fraudulent transfer claim regarding the one million dollar payment to bankruptcy court, (2) held that City Bank did not have standing to pursue the fraudulent transfer claims based on the EDI brokerage account or the 7,500 shares of Bank of the West; (3) granted Compass Bank's summary judgment on City Bank's conversion claim; (4) severed City Bank's tortious interference with contract claim and consolidated it into the 2010 case, and (5) stayed further proceedings in the 2009 case until the bankruptcy court resolved relevant matters.[2] *Id.* at 626.

City Bank then filed an unopposed motion for continuance in the 2010 case, which included claims for breach of contract, money had and received, negligence, and now tortious interference, because it argued that it could not finalize its damages amount until the conclusion of the bankruptcy proceedings. Order 4-5, *City Bank v. Compass Bank*, No. 10-CV-62-KC (W.D. Tex. October 21, 2010). The Court granted that motion on October 21, 2010, and stayed the 2010 case pending resolution of all relevant bankruptcy matters involving SamCorp and the

---

[2] The Order had additional holdings, but they are not discussed here because they have no bearing on the matter at hand.

Sambranos. *Id.* at 8. This Court explained that "City Bank and Compass Bank's claims are interrelated with and dependent upon the myriad proceedings in Bankruptcy Court." *Id.* at 8.

## II. DISCUSSION

In its Motion, City Bank argues that this Court should revoke its earlier referral of the fraudulent transfer claim to bankruptcy court pursuant to 28 U.S.C. § 157(d). Mot. ¶¶ 8-9. Under § 157(d), a district court may withdraw the reference to bankruptcy court if there is "cause shown." 28 U.S.C. § 157(d). Although the statute does not define "cause shown," the Fifth Circuit has explained that the decision "must be based on a sound, articulated foundation." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). In *Holland*, the Fifth Circuit identified the relevant factors for determining whether a court should withdraw a reference to bankruptcy: (A) whether the matter is a core or a non-core proceeding, (B) whether there is a right to a jury trial, (C) whether withdrawal promotes efficiency, and (D) whether withdrawal raises forum shopping concerns. *See id.* at 998-99; *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 874 (E.D. La. 2011); *In re EbaseOne Corp.*, Bankruptcy No. 01–31527–H4–7, 2006 WL 2405732, at * 2 (Bankr. S.D. Tex. June 14, 2006). The Court examines each in turn.

### A. Core versus Non-Core Proceeding

The first *Holland* factor to consider is whether the claim is a "core" or a "non-core" proceeding under bankruptcy law. This distinction is significant because a bankruptcy judge can only enter final judgments in core proceedings. 28 U.S.C § 157(b)(1). In non-core proceedings, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge." *Id.* §

157(c)(1). In that situation, withdrawal from bankruptcy may be more efficient because it will avoid this two-step process.

Core proceedings are those "that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, --- U.S. ----, 131 S. Ct. 2594, 2605 (2011); *see* 28 U.S.C § 157. According to the statute, examples of core proceedings include "matters concerning the administration of the estate," "counterclaims by the estate against persons filing claims against the estate," "proceedings to determine, avoid, or recover preferences," and "determinations of the validity, extent, or priority of liens." 28 U.S.C § 157(b)(2). However, even if a matter is a core proceeding under the statute, the Supreme Court recently held that Article III of the Constitution prohibits a bankruptcy court from entering final judgment on a state law claim that is independent of a federal statutory scheme. *See Stern*, 131 S. Ct. at 2614-15, 2620. For these claims too, Article III requires a district court to enter final judgment, not the bankruptcy court. *See id.*

Here, the parties appear to assume that City Bank's fraudulent transfer claim based on the one million dollar payment is a non-core proceeding. City Bank explicitly states that the proceeding is non-core, but does not analyze the issue. *See* Mot. ¶ 10. For its part, Compass Bank states that the bankruptcy court will not enter final judgment. Compass Bank's Resp. to City Bank Texas's Mot. to Withdraw the Reference ("Resp.") ¶ 5. This suggests that Compass Bank assumes the matter is non-core because if it were a core proceeding, then the bankruptcy court could likely enter final judgment. *See* 28 U.S.C § 157(b)(1); *Stern*, 131 S. Ct. at 2614-15, 2620. The rationale for assuming the proceeding is non-core appears to be that the claim is based on a state law and does not directly relate to the debtor-creditor relationship. *See* Mot. ¶ 10.

6

For the purpose of this Motion, the Court assumes without deciding, that the fraudulent transfer claim is non-core. Accordingly, this factor may cut in favor of granting the motion to withdraw the reference to bankruptcy court to avoid the possibility of the two step process — i.e. when the bankruptcy court submits proposed findings of fact and conclusions of law, and then the district court enters final judgment after de novo review. Nevertheless, it is more efficient here to allow the case to proceed in the bankruptcy court. As explained in more detail below, the bankruptcy court is familiar with the facts in this complex case, and thus in the best position to monitor discovery and narrow the issues to be resolved at trial. *See In re Centrix Fin., LLC*, No. 09–cv–00088–PAB, 2009 WL 1605826, at *4 (D. Colo. June 8, 2009) (holding that the case should remain with the bankruptcy judge because she "has familiarity with the underlying procedural and substantive facts so as to allow efficient pretrial case management"); *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 207 (S.D. Tex. 2008) ("[W]ithdrawal should be deferred until [the bankruptcy] court has ruled on all dispositive motions, to further judicial economy and expedite the bankruptcy process.").

### B.  Right to a Jury Trial

The second factor to consider is whether the parties have a right to a jury trial. This factor is relevant to the *Holland* analysis because a bankruptcy judge lacks the authority to conduct a jury trial unless the parties consent. *In re Clay*, 35 F.3d 190, 196–97 (5th Cir. 1994). Therefore, if a party has invoked her Seventh Amendment jury trial right and does not consent to a jury trial in bankruptcy, the reference to bankruptcy must be withdrawn. *See id.*; *Levine*, 400 B.R. at 205-07. However, immediate withdrawal is not required — the district court has discretion to allow the bankruptcy court to manage the pretrial proceedings. *See King v. Fidelity*

*Nat'l Bank of Baton Rouge*, 712 F.2d 188, 192–93 (5th Cir. 1983) (holding that the jury trial right is not implicated by a summary judgment motion); *In re Centrix*, 2009 WL 1605826, at *3-4 ("[I]t is within the district court's discretion to determine at what stage in the proceedings the reference should be withdrawn."); *Levine*, 400 B.R. at 207 ("The right to a jury trial does not preclude a bankruptcy court from resolving pre-trial dispositive motions"). Thus, the Court proceeds to consider whether a jury trial is available, and if so, when the Court should withdraw the case.

The Seventh Amendment provides the constitutional right to a jury trial in a civil case:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re–examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.

The Supreme Court has created a two-part test to parse this language and determine whether a party has a Seventh Amendment right to a jury trial. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996). First, courts consider whether a jury trial was available for the party's action or an analogous action in 1791. *See id.* Second, courts consider whether the remedy is legal or equitable in nature. *See Tull v. United States*, 481 U.S. 412, 417-18 (1987). A remedy that is legal in nature suggests the plaintiff has a Seventh Amendement right to a jury. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 47-48 (1989).

Here, City Bank asserts it has a jury trial right, but provides no analysis of the issue. Mot. ¶ 9(c). Compass Bank simply ignores the issue. *See generally* Resp. It appears that City Bank has a jury trial right because fraudulent transfer actions were brought at law in the 18th-century and City Bank seeks a legal remedy — money damages. *See Granfinanciera*, 492 U.S. at 43;

Mot. ¶ 10. But because of the lack of discussion, the Court assumes for the purposes of this Motion, but does not decide, that City Bank has a jury trial right.

Accordingly, this Court may at some point be required to withdraw this case from bankruptcy court, but the critical question is when. The final two factors of the *Holland* analysis — efficiency and forum shopping — provide guidance as to when the Court should withdraw the reference. *See In re Centrix*, 2009 WL 1605826, at *3-4; Andrew S. Atkin, *Permissive Withdrawal of Bankruptcy Proceedings Under 28 U.S.C. Section 157(D)*, 11 Bankr. Dev. J. 447, 466, 478 (1994-1995).

C.     **Efficiency Considerations**

Efficiency is a critical factor in the *Holland* analysis. *See Holland*, 777 F.2d at 999 (labeling it "considerations of judicial economy"). The Fifth Circuit explained that courts should consider the goals of promoting uniformity in bankruptcy administration, reducing confusion, fostering the economical use of the debtor's and creditor's resources, and expediting the bankruptcy process. *Id.*

Here, efficiency concerns counsel in favor of allowing this claim to proceed in bankruptcy court, and only withdrawing the referral if a jury trial becomes necessary. First, the bankruptcy court is familiar with this case because it has heard evidence on two related fraudulent transfer claims. *See* Mot. ¶¶ 4-5; Pl.'s Unopposed Mot. for Continuance ¶ 3, *City Bank v. Compass Bank*, No. 10-CV-62-KC (W.D. Tex. Mar. 13, 2009). City Bank's original counterclaims alleged that Compass Bank's re-advancement of the one million dollar payment, the Sambranos's pledge of the EDI Financial account, and the Sambranos's pledge of the Bank of the West stock all constituted fraudulent transfers. The underlying theory of all three claims was

9

the same — namely, that all these transfers were made with the intent to defraud City Bank. *See* City Bank's Original Answer and Countercl. ¶¶ 28-30, *Compass Bank v. Sambrano Corp.*, No. 08-CV-280-KC (W.D. Tex. Aug. 25, 2008). The bankruptcy court has already heard evidence and ruled on the fraudulent transfer claims regarding the EDI Financial and Bank of the West pledges. Mot. ¶ 5; Resp. ¶ 2. Therefore, given the bankruptcy court's familiarity with the facts, the parties, and the underlying theories of recovery, the bankruptcy court is in the best position to conduct pre-trial matters relating to the alleged fraudulent transfer claim of the one million dollar payment.

Moreover, withdrawing the case will delay the proceedings because City Bank seeks to join the fraudulent transfer claim with its claims pending in the 2010 case. *See* Mot. ¶ 4. Adding the fraudulent transfer claim to the 2010 case will delay the proceedings because this Court stayed that case "pending resolution of all relevant bankruptcy matters" based upon City Bank's own motion. Order 8, *City Bank v. Compass Bank*, No. 10-CV-62-KC (W.D. Tex. Oct. 21, 2010). Therefore, withdrawing the fraudulent transfer claim will unnecessarily stop all pre-trial activity while this Court waits for the resolution of the bankruptcy proceedings.

City Bank argues that withdrawing the reference will promote efficiency because "little discovery has taken place" in the bankruptcy proceeding. Mot. ¶ 9(b). However, City Bank offers no persuasive reason, and the Court sees none, that discovery cannot continue in bankruptcy court. Mot. ¶ 4. On the contrary, the bankruptcy court's familiarity with the facts of this case put it in the best position to promote "efficient pretrial case management." *See In re Centrix*, 2009 WL 1605826, at *4.

### D. Forum Shopping Concerns

Finally, concerns over forum shopping counsel this Court to allow the case to continue in bankruptcy court until a jury trial is necessary. *See Holland*, 777 F.2d at 999; Atkin, *supra*, at 478. Forum shopping raises fairness concerns — i.e. it is unfair for a party to have a better chance of winning the case because of the forum when the underlying law should be the same. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74-75, (1938); Kevin M. Clermont & Theodore Eisenberg, *Exorcising the Evil of Forum-Shopping*, 80 Cornell L. Rev. 1507, 1511-12 (1995).

Motions to withdraw pose significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion. *In re Blackwell*, 267 B.R. 724, 727-28 (Bankr. W.D. Tex. 2001) (Clark, J.); Atkin, *supra*, at 469. If the party likes the bankruptcy judge's rulings, then the party will not bring the motion. Atkin, *supra*, at 469. But if the party dislikes the rulings, then the party could bring a motion to withdraw. *Id.* By waiting to decide the withdrawal motion until the eve of a jury trial, the district court takes this power out of the hands of the parties. A bankruptcy judge can manage the pretrial issues with the potential for de novo review in the district court. And if a jury trial becomes necessary, a party can then move to withdraw the case at that time.

### E. Weighing the Factors

In summary, the factors suggest this Court should not withdraw this case from bankruptcy. Although this case may be a non-core proceeding and City Bank may have a jury trial right, the availability of de novo review of dispositive orders and a jury trial in this Court ensures adherence with the Constitution while still allowing the bankruptcy court to efficiently manage the pre-trial proceedings. *See In re Centrix*, 2009 WL 1605826, at *3-4; *Levine*, 400

11

B.R. at 205-07. This process will be more efficient because the bankruptcy court is familiar with this case, withdrawal of the reference will only delay the proceedings, and the bankruptcy court is in the best position to supervise discovery. Additionally, forum shopping concerns suggest that this Court should only withdraw the case if and when a jury trial becomes necessary. Therefore, the Court **DENIES** City Bank's Motion to withdraw the reference to bankruptcy court.

### III. CONCLUSION

For the foregoing reasons, City Bank's Motion is **DENIED**.

**The Clerk shall close the case.**

**SO ORDERED**.

**SIGNED** on this 9th day of November, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE